United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD BEALEFIELD, | § | CIVIL ACTION NO |
| (TDCJ–CID #2022207) | § | 4:21–cv–01630 |
| Petitioner, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| BOBBY LUMPKIN, | § | |
| Respondent. | § | |

### MEMORANDUM ON DISMISSAL

The motion for summary judgment by Respondent Bobby Lumpkin is GRANTED. Dkt 9.

The petition for a writ of *habeas corpus* brought by Edward Bealefield is DISMISSED WITH PREJUDICE. Dkt 1.

His motion for evidentiary hearing is DENIED. Dkt 19.

1. Background

The indictment charged Bealefield as follows:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS: The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, Edward Bealefield, hereafter styled the Defendant, heretofore on or about October 12, 2011, through November 17, 2011, did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of

> aggravated sexual assault of a child, committed against [A.R.] on or about October 12, 2011, and an act constituting the offense of aggravated sexual assault of a child, committed against [A.R.] on or about November 17, 2011, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts. Against the peace and dignity of the State. [Signed by the foreman of the Grand Jury.]

Dkt 12-30 at 201.

A jury found Bealefield guilty of continuous sexual abuse of a child in August 2015 in Cause Number 1464575, before the 176th Judicial District Court of Harris County, Texas. Dkt 12-40 at 211–12. The Fourteenth Court of Appeals summarized the pertinent factual background as follows:

> When they first met, appellant was forty-six years old and the complainant was thirteen. They were both neighbors, and their families bonded over a summer trip to the beach.

> Nothing inappropriate happened during the trip, but once they returned home, a romantic relationship started to form. Appellant and the complainant began having frequent conversations in private. They kissed for the first time about a month after the trip. A few months later, their relationship became sexual, and for the next few years, they would meet regularly to have sexual intercourse, as frequently as three or four times each week.

> The complainant claimed that she was in love with appellant, but her feelings gradually waned as she entered high

2

school. At age fifteen, she told a relative about the relationship. The relative notified police, who then arrested appellant.

*Bealefield v State*, 2018 WL 3734102, at *6 (Tex App Houston [14th Dist] Aug 7, 2018, no pet) (unpublished).

Upon conviction by the jury, Bealefield elected to have the trial court assess punishment. Dkt 12-40 at 211. The trial court sentenced him to forty years in prison. Ibid. The Fourteenth Court of Appeals affirmed his conviction in August 2018. *Bealefield v State*, 14-15-00805-CR, 2018 WL 3734102, at *6 (Tex App Houston [14th Dist.] Aug 7, 2018, no pet). Bealefield didn't file a petition for discretionary review with the Texas Court of Criminal Appeals.

Bealefield then filed a state application for a writ of *habeas corpus* on June 26, 2019. Dkt 12-40 at 37. The Texas Court of Criminal Appeals denied it without written order on the findings of the trial court without a hearing and on the court's own independent review of the record on April 14, 2021. Dkt 9-1 at 1.

Bealefield filed this federal petition for a writ of *habeas corpus* in May 2021. Dkt 1. He contends that his conviction is void for several reasons as summarized here and specified further below:

- o He was denied effective assistance of trial counsel because his trial counsel:
  - Failed to investigate the timeline of events;
  - Failed to interview potential witnesses, namely his family members, A.R.'s mother, and a witness who was in the courtroom, Lygia Armstrong;
  - Advised him not to testify;
  - Failed to object to the prosecutor's closing statement, the jury charge, and the lack of notice regarding extraneous offenses;
  - Failed to investigate his medical condition;

3

- • Failed to file a motion to suppress evidence obtained through an illegal search and seizure;
- ○ The evidence is insufficient to support his conviction;
- ○ The prosecution erred during closing argument by stating opinions instead of facts; and
- ○ His due process rights were violated during his state *habeas* proceeding.

Dkt 1 at 6–8.

2. Legal standard

Respondent moves for summary judgment, arguing that claim two is procedurally barred and that the remaining claims by Bealefield lack merit and must be dismissed. Dkt 9 at 7–10. Also submitted were the trial transcript and other state-court records. Dkts 11 & 12.

a. AEDPA

Bealefield proceeds here *pro se*. A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Martin v Maxey,* 98 F3d 844, 847 n 4 (5th Cir 1996); *Bledsue v Johnson,* 188 F3d 250, 255 (5th Cir 1999).

The Antiterrorism and Effective Death Penalty Act, 28 USC § 2241 *et seq*, governs this federal petition for *habeas corpus*. See *Woodford v Garceau*, 538 US 202, 205–08 (2003); *Lindh v Murphy*, 521 US 320, 335–36 (1997). This has consequences for the standard of review as to disputed questions of both law and fact.

As to disputed questions of law, AEDPA bars federal *habeas corpus* relief based upon claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); see also *Early v*

4

*Packer*, 537 US 3, 7–8 (2002); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). The Fifth Circuit holds that a state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d 436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2002). And the Fifth Circuit holds that *an unreasonable application of federal law* means that the decision is "unreasonable, not merely wrong; even clear error will not suffice." *Escamilla v Stephens*, 602 F Appx 939, 941 (5th Cir 2015, *per curiam*), quoting *White v Woodall*, 572 US 415, 419 (2014). This is a high bar. To satisfy it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015), quoting *Harrington v Richter*, 562 US 86, 103 (2011).

As to disputed questions of fact, AEDPA precludes federal relief unless the adjudication by the state court of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d)(2); see also *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before

5

the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the Supreme Court instructs that it "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v Cain*, 576 US 305, 313–14 (2015), quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, § 2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error had "substantial and injurious effect." *Brecht v Abrahamson*, 507 US 619 (1993); for example, see *Hughes v Quarterman*, 530 F3d 336, 345 (5th Cir 2008). This high bar isn't met where evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). There must be more than a mere reasonable possibility that it contributed to the verdict. *Brecht*, 507 US at 638. But where a court is confident the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

Finally, several other technical or procedural limitations can foreclose federal *habeas corpus* relief. For instance, a federal claim is foreclosed if it is barred because of a failure to comply with state procedural rules. See *Coleman v Thompson*, 501 US 722 (1991). It is likewise foreclosed if it seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced. See *Teague v Lane*, 489 US 288 (1989).

The scope of federal review on *habeas corpus* is limited by the "intertwined doctrines" of both exhaustion and procedural default. *Bledsue v Johnson*, 188 F3d 250, 254

(5th Cir 1999). These are intertwined because a failure to exhaust may also result in procedural default.

*As to exhaustion,* the Anti-Terrorism and Effective Death Penalty Act of 1996 requires that a person in custody pursuant to the judgment of a state court generally must exhaust available state remedies prior to filing a petition for a writ of *habeas corpus* in federal court. To meet this requirement "the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v Dretke*, 372 F3d 748, 755 (5th Cir 2004), quoting *Anderson v Harless*, 459 US 4, 6 (1982). This means that a petitioner must present his claims in a procedurally proper manner to the highest court of criminal jurisdiction in the state, which in Texas is the Texas Court of Criminal Appeals. See *O'Sullivan v Boerckel*, 526 US 838, 844–45 (1999); *Richardson v Procunier*, 762 F2d 429, 432 (5th Cir 1985).

A Texas prisoner may exhaust state court remedies by filing a direct appeal from a judgment of conviction, followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals. See TRAP 68.1; TCCP art 11.07. A prisoner may also file an application for a writ of *habeas corpus* under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is sent to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. See TCCP art 11.07, § 3(c). Texas prisoners must typically exhaust state remedies "by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral" review under Article 11.07. *Busby v Dretke*, 359 F3d 708, 723 (5th Cir 2004).

*As to procedural default,* if a petitioner fails to exhaust state remedies (or to satisfy an exception to exhaustion) and the state court would find the claims procedurally barred, then "there is a procedural default for purposes of federal habeas." *Coleman v Thompson*, 501 US 722, 735 n 1 (1991); *Williams v Thaler*, 602 F3d 291, 305 (5th Cir 2010), quoting *Bagwell v Dretke*, 372 F3d 748, 755 (5th Cir 2004).

7

Thus, in line with the text of § 2254(b)(2), a district court reviewing the claims of a *habeas* petitioner who fails to satisfy the exhaustion requirement may dismiss the action on either procedural-default grounds or on the merits. *Trevino v Davis*, 829 F3d 328, 341 (5th Cir 2016). This means that procedural default functions as a "corollary to the habeas statute's exhaustion requirement," similarly constricting the scope of federal review on *habeas* corpus. *Dretke v Haley*, 541 US 386, 392–93 (2004); see also *Coleman*, 501 US at 729.

Federal review of a claim on *habeas corpus* is also procedurally barred if the last state court to consider the claim expressly and unambiguously bases its denial of relief on a state procedural default. *Davila v Davis*, 137 S Ct 2058, 2064 (2017); *Coleman v Thompson*, 501 US 722, 729 (1991). But to qualify, that state-law procedural ground must provide an "independent and adequate ground for dismissal." *Rocha v Thaler*, 626 F3d 815, 820 (5th Cir 2010), quoting *Nobles v Johnson*, 127 F3d 409, 420 (5th Cir 1997). As used, *independent* means "independent of the merits of the federal claim." Id at 821, quoting *Finley v Johnson*, 243 F3d 215, 218 (5th Cir 2001). And *adequate* means that the rule is "strictly or regularly applied evenhandedly to the vast majority of similar claims." Ibid*, quoting *Amos v Scott*, 61 F3d 333, 339 (5th Cir 1995). See *Ex parte Grigsby*, 137 SW3d 673, 674 (Tex Crim App 2004) ("[W]here an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and [the TCCA] subsequently dispose[s] of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable."); see also *Reed v Thaler*, 428 F Appx 453, 454 (5th Cir 2011, *per curiam*); *West v Johnson*, 92 F3d 1385, 1398 n 18 (5th Cir 1996). This procedural default is also an independent and adequate state law ground to invoke the procedural bar insofar as it is not based on federal law, and Texas courts have routinely held that a sufficiency claim is not cognizable on state *habeas* review. See *Ex parte Knight*, 401 SW3d 60, 64 (Tex Crim App 2013).

8

A petitioner may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 US at 750; see also *Trevino v Thaler*, 569 US 413, 421 (2013). As used, *cause* must be something external to the petitioner that can't be fairly attributed to him. *McCowin v Scott*, 67 F3d 100, 102 (5th Cir 1995). And *actual prejudice* requires a petitioner to demonstrate that "the error had substantial and injurious effect or influence in determining the" outcome of litigation. *Barrientes v Johnson*, 221 F3d 741, 756 (5th Cir 2000), quoting *Brecht v Abrahamson*, 507 US 619, 637 (1993).

A petitioner may also obtain federal review of a defaulted claim by demonstrating that failure to consider the claim will result in a *fundamental miscarriage of justice*. This exception applies where the petitioner is actually innocent of the crime of which he was convicted. *Rocha*, 619 F3d at 402; *Sawyer v Whitley*, 505 US 333, 339–40 (1992). A showing of actual innocence requires a petitioner to produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v Delo*, 513 US 298, 324, 329 (1995); see also *McQuiggin v Perkins*, 569 US 383, 386 (2013); *House v Bell*, 547 US 518, 536–38 (2006). To be clear, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v Collins*, 506 US 390, 404 (1993). It isn't a stand-alone claim. Id at 400.

b. AEDPA and Rule 56

The Fifth Circuit holds, "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context

9

of habeas corpus cases." *Clark v Johnson*, 202 F3d 760, 764 (5th Cir 2000). But where Rule 56 and the rules governing *habeas corpus* petitions conflict, the latter governs. *Austin v Davis*, 647 F Appx 477, 483 (5th Cir 2016, *per curiam*); see also *Torres v Thaler*, 395 F Appx 101, 106 n 17 (5th Cir 2010, *per curiam*) (citations omitted). As such, the presumption of correctness mandated by § 2254(e)(1) "overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Austin*, 647 F Appx at 483 (citation omitted); cf *Anderson v Liberty Lobby*, 477 US 242, 255 (1986) (stating typical summary-judgment standard in civil cases).

An articulated opinion from a state court has natural pertinence to resolution of disputed questions of both law and fact on *habeas corpus* review. But some state-court decisions reach a conclusion without such articulation. What then? The Fifth Circuit holds, "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v Johnson*, 194 F3d 641, 651 (5th Cir 1999), quoting *Lott v Hargett*, 80 F3d 161, 164 (5th Cir 1996). This is because a presumption exists that later, unexplained orders rejecting a federal claim are decided on the same basis as earlier, reasoned orders resting upon the same ground. *Ylst v Nunnemaker*, 501 US 797, 803 (1991). This also accords with decisional practice of the Texas criminal courts. The Texas Court of Criminal Appeals holds that a statement of *denial* of a state application for a writ of *habeas corpus* without written order signifies an adjudication that the court below reached the correct ruling on the merits (as compared to a statement of *dismissal*, which means only that the claim was declined on grounds other than the merits). *Ex parte Torres*, 943 SW2d 469, 472 (Tex Crim App 1997, *en banc*); see also *Singleton v Johnson*, 178 F3d 381, 384 (5th Cir 1999).

Even so, the state court's decision will at times be unaccompanied by explanation, with no level of review

having issued a reasoned opinion. The Supreme Court holds in such situations that "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see *Salts v Epps*, 676 F3d 468, 480 n 46 (5th Cir 2012) (applying *Harrington*).

###### 3.   Claim 2: sufficiency of the evidence

Bealefield challenges the sufficiency of the evidence as his second claim and argues that he properly exhausted it. Dkt 16 at 9. He didn't. Bealefield was required to present this challenge to the sufficiency of the evidence on direct appeal. He did file a direct appeal, but he didn't file a petition for discretionary review to the Texas Court of Criminal Appeals. This means that it was defaulted on collateral review. *Ex parte Grigsby*, 137 SW3d 673, 674 (Tex Crim App 2004). Without proper exhaustion, the second claim is procedurally barred from review here.

Bealefield can overcome this procedural bar to federal review by demonstrating "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Smith v Johnson*, 216 F3d 521, 524 (5th Cir 2000) (internal quotation marks and citation omitted). But Bealefield can't show *cause* because state court records reflect that he could have—and should have—raised this claim as part of his direct appeal. With no showing of *cause*, the inquiry into *actual prejudice* needn't be considered. See *Saahir v Collins*, 956 F2d 115, 118 (5th Cir 1992). Likewise, Bealefield doesn't make a satisfactory showing as to any *fundamental miscarriage of justice*. Indeed, he fails to address why a sufficiency claim wasn't raised on direct appeal in a petition for discretionary review.

Bealefield's second claim for federal review on *habeas corpus* will be dismissed as procedurally barred.

4.   Claim 3: Prosecutorial misconduct

Bealefield asserts that the prosecutor erred during closing argument when he stated that A.R. remembered the first time she had sex with Bealefield, and because the prosecutor stated that A.R. was maybe fourteen or fifteen when Bealefield took photos of her in lingerie. He also complains about the prosecutor's summation of the evidence, and in particular his references to the text messages between Bealefield and A.R., the jewelry box A.R. said Bealefield gave her, the t-shirts Bealefield gave her to wear, and photos of the motel where Bealefield sexually assaulted A.R. Dkt 1 at 7; Dkt 3 at 16–18; Dkt 12-2 at 74–81 (closing argument).

The "standard set forth in *Darden v Wainwright*, 477 US 168 (1986), governs claims of prosecutorial misconduct in a state court prosecution. See *Parker v Matthews*, 567 US 37, 45 (2012, *per curiam*). A constitutional violation occurs only where "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 US at 181, quoting *Donnelly v DeChristoforo*, 416 US 637 (1974). Federal relief on *habeas corpus* is rarely granted on the basis of prosecutorial misconduct because "a prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" *Menzies v Procunier*, 743 F2d 281, 288–89 (5th Cir 1984), quoting *Houston v Estelle*, 569 F2d 372, 382 (5th Cir 1978). A prosecutor's comments will only render a trial unfair where "a crucial, critical, highly significant factor in the jury's determination of guilt." *Whittington v Estelle*, 704 F2d 1418, 1422 (5th Cir 1983).

"It is well established that an attorney may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as they are based on the evidence." *United States v Delgado*, 672 F3d 320, 336 (5th Cir 2012), citing *United States v Webb*, 950 F2d 226, 230 (5th Cir 1991). "A prosecutor's assertion of what he believes

the evidence will show and has shown is not error" and doesn't constitute improper argument. *Ortega v McCotter*, 808 F2d 406, 410 (5th Cir 1987) (citation omitted). "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'" Ibid, quoting *United States v Windom*, 510 F2d 989, 994 (5th Cir 1975) (finding no error in prosecutor's reference to defendant as "con artist").

However, prosecutors are not without limits. "[A] prosecutor's closing argument cannot roam beyond the evidence presented during trial: Except to the extent the prosecutor bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses." *Gallardo–Trapero*, 185 F3d at 320 (cleaned up).

When prosecutors exceed their limits with "improper comment or questioning," "it generally must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v Castillo,* 77 F3d 1480, 1497 (5th Cir 1996) (citation and internal quotation marks omitted). In that instance, it amounts to reversible error. Ibid.

Context is important when reviewing the prosecutor's responsive argument. Defense counsel argued in part as follows in his closing summation:

> And what your job at that point, your job is to decide has the State of Texas proved to you beyond a reasonable doubt that Mr. Bealefield committed the acts of aggravated sexual assault to A.R. between October 12, 2011, November 17, 2011, that it was a continuous sexual assault during those dates.
>
> Now, I want you to look at all the evidence. We had a ton of evidence in this case. Look at all this evidence here, and here, and here, and everywhere. See if you find any piece of evidence, even one piece of

13

evidence that shows you 2011 on it. I want to show you a very important date here. If I can get this to work. Can you see that? That's the date that A.R. turned 14, April 14, 2012. This indictment alleges that these acts happened when she was younger than 14, back in October through November of 2011. What evidence do we have of that? That's the question you have to ask yourself.

Now, the State put on a lot of evidence to show all sorts of phone calls, to show text messages, to show the police involvement. You look through all of this, and this is all well after those dates. This is all in 2012, 2013, 2014.

When we look at the evidence, let's start, the first -- the first time the police got involved was in December 20, 2012. That was the first time the police were notified by A.R.'s mother. And you'll remember what she said, she said the police came out, they talked to her, and A.R. denied it. Said no, my mother's crazy, my mother is an alcoholic and a drug addict and my mother has all these problems, mental problem, and I didn't do anything with Mr. Bealefield.

The police go away. They come back later. When do they come back? It's not until May of 2013. May of 2013, a year and a half later. The police stop a car, and in the car is Mr. Bealefield and A.R. And what did A.R. say? She said, hey, Mr. Bealefield and I, he's a friend, he's the neighbor, he comes out to pick me up and take me to breakfast because I'm hungry because my mother is such an alcoholic –

14

MR. SOCIAS: I'm going to object, outside the record.

MR. MCCOY: All right. In any event, Mr. Bealefield is taking her out for breakfast before school hours. And Mr. Bealefield also told the police, you'll recall, I'm taking her out to get her some breakfast. We're going to the Jack In The Box, then I'm going to take her back to school.

But the police don't believe him. They detain him for a number of hours. They go through everything. They take him down there. He gives a statement. A.R. gives a statement. The police let him go because once again A.R. says, look, I don't know what's going on but nothing has happened between Mr. Bealefield and me, nothing's happening.

Then the police continue their investigations and they find nothing. In the meantime, it's not until July 17, 2013, that A.R. goes to the police and says, well, yeah, okay, Mr. Bealefield and I are having a sexual affair. We are having sex together, and we've been having sex for a while.

Now, you have to ask yourself, first of all, what does this case hinge on? The main thing it hinges on is A.R.'s testimony about when this thing started. You have all of this evidence tends to prove that if Mr. Bealefield is guilty of anything, it happened at least after 2012, at least after she was 14 if not older, 14, 15, maybe even 16, but certainly not when she was 13.

The only -- only thing the State has produced to say that it happened in 2013 -- or 2011 is A.R. herself where she said,

15

yeah, it started back in 2013. And if you'll recall on direct what she said, was she remembered that they'd taken a summer vacation, a summer vacation, and then it started later after the summer vacation.

Well, on direct she said it started a month or two later, which means that it would have been October, November of 2011. But on cross-examination when I was talking to her, if you'll recall, what did she say? She said it was a few months after the trip, not -- not a couple of months but a few months after the trip. It was later. She couldn't remember the exact time. And I understand she can't remember the exact time, but let's take a look at what else was going on in A.R.'s life. She told us that she was having psychological problems. She's having all sorts of other problems, school problems, psychological problem, problems at home, family problems, to the extent to where she starts cutting herself. She's cutting her wrists to the extent to where she's finally committing suicide or trying to commit suicide to the extent to where she winds up in the hospital for committing suicide.

This is a troubled girl, and it's not unusual that troubled girls may not get their dates exactly right. So what you have to do is ask yourself, do I really believe that it happened back then in 2011, in which case it could be a continuous, or did it happen after 2012, after April of 2012, in which case it's just an aggravated sexual assault, or did it happen at all. That's what you have to ask yourself.

Dkt 12-2 at 66–70.

16

The prosecutor responded in part as follows:

> One of the saddest things that happens in cases like this is you have a girl, and only in these cases a girl that comes up here and testifies, and only to be told that she's a liar, that she made it up, that it's a fantasy. Only in these types of cases do you see that. But get one thing clear and remember this, A.R. got up on there, got up on that stand, took an oath, and talked to you about what happened to her. A girl talked to you about being 13 years old and losing her virginity to a 48-year-old man next door. That's what she told you. That wasn't fun for her. We all know that wasn't fun.

> And you know she remembered. That's the first time she had sex. 13 years old with the man sitting across from you. And she remembers the date real well, because that's when the relationship started. They went on a summer trip, and that's when the defendant started asking about their relationship to take it to the next step. She's very sure of the dates.

> She told you about all the different ways the defendant had sex with her, vaginal, oral sex, anal sex, all of that. That's what she had to share in a room full of people, strangers she never met before, while the defendant sits right across there and stares at her.

> If you believe what she said up there, that defendant is guilty of this charge, continuous sexual abuse. No doubt about that. If you believe what she said he is guilty. And we know we can believe what she said. We talked about this in jury selection, one witness. That's what these

17

cases boil down to. The evidence that you use to decide is from what you hear up on that stand and what's right here. The only thing you've heard is that girl talked to you about her sexual experiences.

How do we know we can believe her? Because everything makes sense. She has no reason to lie. She has no motive to lie. At this point, we said years later, why would she do that? Why would she put herself through that? What does she have to gain? She told you the embarrassing truth, that she had sex with a man that she loved, who she thought she did. It was a relationship that she thought was appropriate.

Dkt 12-2 at 74–75.

As is quite clear, the jury heard graphic testimony of the sexual relationship between Bealefield and A.R. But the statements by the prosecutor that Bealefield attacks were all proper summations of the evidence presented. He essentially argued that the jury would have to believe that A.R. was lying in order to find that Bealefield wasn't guilty of the charged offense. And he further summarized the evidence for the jurors, noting that A.R. remembered the approximate date of her first sexual experience and that A.R. had no motive to lie about the sexual abuse that took place over a two-year period. Even if the statement was improper under *Gallardo–Trapero,* it certainly was not "so pronounced and so persistent that it permeate[d] the entire atmosphere of the trial."

The Texas Court of Criminal Appeals denied relief on *habeas corpus* as to the prosecutorial misconduct claim. In doing so, it reasonably applied the law to the facts, consistent with clearly established federal law. Bealefield hasn't shown a basis for the relief he seeks. 28 USC § 2254(d)(1).

18

### 5. Ineffective assistance of counsel

Bealefield's first claim is based on ineffective assistance of trial counsel. Bealefield asserts that his trial counsel was ineffective in a number of ways:

- o  He failed to investigate the timeline of events;
- o  He failed to interview potential witnesses, namely his family members, A.R.'s mother, and a witness who was in the courtroom, Lygia Armstrong;
- o  He advised him not to testify;
- o  He failed to object to the prosecutor's closing statement, the jury charge, and the lack of notice regarding extraneous offenses;
- o  He failed to investigate his medical condition; and
- o  He failed to file a motion to suppress evidence obtained through an illegal search and seizure;

Bealefield must demonstrate both *deficient performance* and ensuing *prejudice* to establish ineffective assistance by his trial counsel. See *Strickland v Washington*, 466 US 668 (1984); see also *Charles v Stephens*, 736 F3d 380, 388 (5th Cir 2013). "Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so." *Charles*, 736 F3d at 389 (internal quotations and citation omitted); see also *Harrington*, 562 US at 105.

To establish *deficiency*, the petitioner must show that the performance by trial counsel fell below an objective standard of reasonableness based on "prevailing norms of practice." *Loden v McCarty*, 778 F3d 484, 494 (5th Cir 2016); see also *Kitchens v Johnson*, 190 F3d 698, 701 (5th Cir 1999). In that regard, courts should be "highly deferential" to counsel. *Strickland*, 466 US at 689. This means that "counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." Id at 690. This is particularly true as to

"strategic choices made after thorough investigation of law and facts relevant to plausible options," which are "virtually unchallengeable." Id at 690–91; see also *United States v Jones*, 287 F3d 325, 331 (5th Cir), cert denied, 537 US 1018 (2002). "*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose." *Moore v Johnson*, 194 F3d 586, 615 (5th Cir 1999). But beyond this, the Fifth Circuit has described the deficient-performance standard as requiring counsel to have "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Jones*, 287 F3d at 331.

To establish *prejudice*, the petitioner must show a reasonable probability that—absent the deficient performance—the outcome of the proceedings would have been different. *Reed v Stephens*, 739 F3d 753, 773 (5th Cir 2014), quoting *Strickland*, 466 US at 687. In this context, a *reasonable probability* is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 US at 694.

On federal *habeas* review, this Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v Quarterman*, 455 F3d 529, 534 (5th Cir 2006). In other words, simply because counsel's strategy wasn't successful doesn't mean counsel's performance was deficient. *Avila v Quarterman*, 560 F3d 299, 314 (5th Cir 2009).

    a.  Claims 1A and 1E: failure to investigate timeline and medical condition

Bealefield alleges that he was denied effective assistance of trial counsel because his trial counsel failed to investigate the timeline of events and his medical condition. Dkt 1 at 6; Dkt 3 at 9–13.

As to the timeline of events, Bealefield complains that counsel failed to investigate and discover all of the different

20

places A.R. lived while the abuse was allegedly taking place. He asserts that it only took place during a two-month period between October 12th to November 17th of 2011. Dkt 16 at 26. And he apparently argues that because A.R. moved around so much, he couldn't have sexually abused her on a regular basis, as claimed by A.R.

Bealefield's defense counsel, Kenneth E. McCoy, submitted the following affidavit in the state proceedings on *habeas corpus*:

> I had access to the State's file in Mr. Bealefield's case and I reviewed all of its contents, including police reports written by various officers, photographs, video of the complainant's statements, the complainant's medical records, and data from the complainant's computer and cell phone including many text messages. I recall discussing the State's evidence with Mr. Bealefield, and I believed that he understood the evidence. Mr. Bealefield expressed to me that he believed the State's case would fall apart, particularly when I cross-examined the complainant. He claimed that the complainant's mother had an issue with him, though sometimes his story about why she had the issue would change, and I did not have any evidence corroborating his claims about the mother.
>
> I did not speak with the complainant prior to trial. I watched the complainant's statements and she seemed firm that she was going to testify that the sexual assault occurred. I was already aware of inconsistencies in her claims. *I do not believe additional evidence regarding a timeline of where the complainant was living would have helped Mr. Bealefield or disproven that he had access to the*

21

> *complainant, particularly in light of the*
> *evidence that he picked her up from school.*

Dkt 12-39 at 2–3 (emphasis added).

The state *habeas* court found:

> 15. The Court finds that the applicant fails to prove Mr. McCoy was deficient for failing to establish a timeline regarding the dates the victim lived with other family members.
>
> a. The record establishes that Mr. McCoy cross-examined the victim about the fact that she moved around quite a bit, and the victim was unclear about the dates. 5 R.R. at 7 (living with mother), 8 (grandparents), 10 (grandparents), 11 (mother), 13-14 (mother, aunt, grandparents), 16 (mother), 25 (aunt), 27 (grandparents), and 29 (mother, grandparents, mother, aunt, hospital, friend, neighbor).
>
> b. Mr. McCoy "do[es] not believe additional evidence regarding a timeline of where the complainant was living would have helped [the applicant] or disproven that he had access to the complainant, particularly in light of the evidence that [the applicant] picked her up from school." McCoy Affidavit, p. 2.
>
> c. The applicant fails to establish that additional evidence about a timeline of the victim's living arrangements would have been beneficial, and fails to establish that he was harmed by the lack of additional evidence about the timeline.

Dkt 12-39 at 19–20.

22

Bealefield also complains that counsel didn't investigate his medical condition. Bealefield's defense counsel Mr. McCoy stated in his affidavit in the state proceedings on *habeas corpus*,

> I am certain Mr. Bealefield never told me that he had a "massive hydrocele" or any medical condition in his genital area. That definitely would have stuck out in my mind and, if true, easily could have been presented during trial. Had Mr. Bealefield told me this, I would have investigated this claim and presented any credible evidence supporting it, including impeaching the complainant.

Dkt 12-39 at 3.

The state *habeas* court found:

> 14.  The Court finds that the applicant fails to prove Mr. McCoy was deficient for failing to discover that the applicant allegedly had an injury to his reproductive organs, namely a massive hydrocele he had allegedly had since 2006.
>
> a.  Mr. McCoy is "certain that [the applicant] never told [him] that [the applicant] had a 'massive hydrocele' or any medical condition in his genital area. That definitely would have stuck out in [Mr. McCoy's] mind and, if true, easily could have been presented during trial. Had [the applicant] told [Mr. McCoy] this, [Mr. McCoy] would have investigated this claim and presented any credible evidence supporting it, including impeaching the complainant." McCoy Affidavit, p. 2.
>
> b.  The applicant acknowledges he did not tell Mr. McCoy that the applicant had an injury to his reproductive organs,

23

namely a massive hydrocele. Writ Application, p. 18.

c. The applicant provided medical documentation from 2017. See Applicant's Writ Exhibit A, TDCJ Correctional Managed Care Clinic Notes, dated December 4, 2017. The sexual abuse occurred in 2011.

d. Assuming arguendo the applicant had an injury at the time of the incident, the applicant fails to prove Mr. McCoy was deficient for failing to investigate it because the applicant never told Mr. McCoy about the injury.

Dkt 12-39 at 18–19.

Deferring to the state court's factual findings, the state court's application of *Strickland* isn't objectively unreasonable. "Informed strategic decisions by counsel are given a heavy measure of deference and should not be second guessed." *United States v Jones,* 287 F3d 325, 331 (5th Cir 2002). Furthermore, Bealefield failed to demonstrate what a more thorough investigation would have revealed and how it would have altered the outcome of his trial. *Gregory v Thaler,* 601 F3d 347, 352 (5th Cir 2016) (petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"). In short, Bealefield doesn't explain with any specificity what investigations into other places A.R. lived and into his own medical conditions would have revealed and how they would have altered the outcome of his trial.

b.   Claim 1B: failure to call witnesses

Bealefield asserts that counsel rendered ineffective assistance by failing to interview and call witnesses— namely, his family members, A.R.'s mother (who owed Bealefield money), and Lygia Armstrong (a witness in the

24

courtroom). Dkt 1 at 6; Dkt 3 at 11–12. "To prevail on an ineffective assistance of counsel claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v Thaler*, 601 F3d 347, 352 (5th Cir 2010). See also *Sayre v Anderson*, 238 F3d 631, 635–36 (5th Cir 2001).

The state *habeas* court found:

> 12.  The Court finds that the applicant fails to prove Mr. McCoy was deficient for failing to interview the applicant's three daughters and their friend.
>
> a.  Mr. McCoy "would not have reached out to [the applicant's] children without [the applicant] telling [him] he wanted them to be involved with his case or testify in his trial." McCoy Affidavit, p. 4. "[T]here was no indication in the case that [the applicant's children] would have been essential witnesses." McCoy Affidavit, p. 4.
>
> b.  The applicant fails to allege that his daughters and their friend attempted to contact Mr. McCoy
>
> c.  The applicant provides no affidavit from his three daughters and their friend.

Dkt 12-39 at 16.

The state *habeas* court also found:

> 9. The Court finds that the applicant fails to prove Mr. McCoy was deficient for failing to speak with witness Lygia Armstrong.
>
> a.  Mr. McCoy does not recognize the name Lygia Armstrong and has not located any notes in his file that contain her name. McCoy Affidavit, p. 3.
>
> b.  Assuming arguendo that Ms. Armstrong was 1) present during one of the

25

applicant's court settings and 2) wanted to speak with Mr. McCoy 3) about something relevant or beneficial, the applicant fails to prove that Mr. McCoy was aware that Ms. Armstrong was present in court and wanted to speak with him.

c. If Mr. McCoy had known Ms. Armstrong was in court, Mr. McCoy "would have spoken with her and almost certainly made notes in [his] file. Had she said anything that would indicate she would be a beneficial witness in [the applicant's] trial, [Mr. McCoy] would have certainly made notes in [his] file and attempted to ensure she was present to testify." McCoy Affidavit, p. 3.

d. The applicant provides no affidavit from Lygia Armstrong and fails to allege what Ms. Armstrong would have told Mr. McCoy. The applicant fails to establish that Ms. Armstrong had any beneficial information relevant to the applicant's investigation or trial. The applicant fails to allege that Ms. Armstrong would have testified in his trial.

Dkt 12-39 at 13–14.

This court has been clear that such "complaints based upon uncalled witnesses" are "not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and that speculations as to what these witnesses would have testified is too uncertain." *Alexander v McCotter*, 775 F2d 595, 602 (5th Cir 1985) (citations omitted). And to satisfy *Strickland*'s prejudice requirement under such circumstances "the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Ibid (citations omitted).

26

Here, Bealefield hasn't shown that the mentioned witnesses' testimony would have been favorable to his defense. He doesn't describe the substance of their testimony or explain why it would have altered the outcome at trial.

Bealefield maintains that he never had sex with A.R. A.R. testified that she and Bealefield had sex in various locations, including her home, motels, and a camper in the neighbor's backyard. A.R. never testified that any other individuals were present when the abuse took place. Bealefield's argument that counsel should have called these favorable witnesses is conclusory. See *Harper v Lumpkin*, 19 F4th 771, 778 (5th Cir 2021) ("Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."), quoting *Miller v Johnson*, 200 F3d 274, 282 (5th Cir 2000).

Bealefield fails to demonstrate that trial counsel's strategy was ill-chosen. As such, he hasn't shown that counsel was ineffective or that the state *habeas* court's rejection of this claim was unreasonable or contrary to federal law. This claim will be dismissed.

c.   Claim 1C:   erroneous   advice   about testifying

Bealefield asserts that counsel rendered ineffective assistance by advising him not to testify. Dkt 1 at 6. "A criminal defendant has a constitutional right to testify in his own behalf, and this right is granted to the defendant personally and not to his counsel." *United States v Martinez*, 181 F3d 627, 628 (5th Cir 1999). Waiver must be knowing and voluntary. *Emery v Johnson*, 139 F3d 191, 198 (5th Cir 1997). Further, only the defendant may waive this right; counsel may not waive the right on the defendant's behalf. See *United States v Mullins*, 315 F3d 449, 454 (5th Cir 2002), citing *Emery v Johnson*, 139 F3d 191, 198 (5th Cir 1997). When a defendant asserts that counsel interfered with his right to testify, the claim is appropriately considered as an ineffective assistance of

27

counsel claim. Id at 452–53, citing *Sayre v Anderson*, 238 F3d 631, 634 (5th Cir 2001).

The state *habeas* court found:

> 18. The Court finds that the applicant fails to prove Mr. McCoy was deficient regarding advice about the applicant testifying.
>
> a. Mr. McCoy explained in his affidavit his customary practice and procedure about his advice to clients regarding their right to testify. McCoy Affidavit, p. 4.
>
> b. Mr. McCoy also explained in his affidavit his specific advice to this applicant, including their multiple conversations about testifying and the applicant's response to Mr. McCoy's challenges regarding certain pieces of evidence. McCoy Affidavit, p. 5. "For a while [Mr. McCoy] believed [the applicant] would, in fact, testify." McCoy Affidavit, p. 5. "Throughout [his] representation, [the applicant] was constantly changing his mind." McCoy Affidavit, p. 5. When the State rested during the applicant's trial, Mr. McCoy reviewed the advantages and disadvantages of testifying. McCoy Affidavit, p. 5. "Although [Mr. McCoy] had prepared [the applicant] to testify, [Mr. McCoy] did not know whether [the applicant] would or not until the moment to make his decision arrived." McCoy Affidavit, p. 5.
>
> c. After the State rested, Mr. McCoy requested to put the following on the record:
>
>> Mr. McCoy: Mr. Bealefield, you and I have talked about your case, right?
>>
>> The Defendant: Yes, sir.

28

Mr. McCoy: And you understand we've reached the point where the State has rested and you have a choice to testify or not testify, correct?

The Defendant: Yes.

Mr. McCoy: And we've talked about the advantages and disadvantages of testifying.

The Defendant: Yes.

Mr. McCoy: And we've talked about the advantages and disadvantages of not testifying.

The Defendant: Yes.

Mr. McCoy: And you and I have talked about all of this, you've asked me a lot of questions. We've talked about everything. It's now time for you to make a decision. Have you decided, do you want to testify in your case or not?

The Defendant: I guess not. I hope that's the right decision.

Mr. McCoy: Okay. So it's your wish at this point to not testify in your own behalf and for us to simply rest; is that correct?

The Defendant: Yes.

6 RR 63-64.

d.  The applicant fails to prove that Mr. McCoy provided insufficient or inaccurate advice regarding the applicant's right to testify.

e.  The applicant fails to prove that his decision to not testify was not knowing, intelligent, and voluntary. See 6 R.R. at 63-64; McCoy Affidavit, p. 4-5.

29

Dkt 12-39 at 23–25.

In this federal *habeas* proceeding, Bealefield points to no evidence, much less clear and convincing evidence, to support his assertion that he was prevented from testifying. The record does not show that Bealefield told the trial court that counsel was preventing him from testifying during the guilt phase of the proceedings. The record clearly undercuts Bealefield's claim. Bealefield's bare and unsupported allegations are legally insufficient to entitle him to *habeas* relief. See *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). This claim will be dismissed.

> d. Failure to object and file motions to suppress
>
> > i. Claim 1D: Failure to object to argument

In claim 1D, Bealefield faults counsel for not objecting to the prosecutor's arguments.

Trial counsel's strategy was to question A.R.'s credibility. Through his cross-examination of witnesses, counsel emphasized that A.R. had a history of depression; she made at least three suicide attempts; she engaged in self-mutilation; her mother was mentally ill and an alcoholic; she lived in different places, including with other family members; she and her sister went swimming at Bealefield's house; Bealefield lived next door with his girlfriend, Mary Katherine and their young daughter; and she gave inconsistent statements to investigators, including outright denials of abuse. Counsel rigorously cross-examined police officers and other forensic personnel who examined the cell phones and computers as to their method for retrieving information and whether they were even connected to Bealefield.

In Texas, proper prosecutorial jury argument consists of (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) a response to an opponent's argument, or (4) a plea for law enforcement. *Hughes v Quarterman*, 530 F3d 336, 347 (5th Cir 2008); *Ward v Dretke*, 420 F3d 479, 497 (5th Cir 2005). Improper jury argument is a basis for federal *habeas* relief only if it is so prejudicial as to render the trial fundamentally unfair. *Darden v Wainwright*, 477 US 168, 182–83 (1986); *Hughes*, 530 F3d at 347, quoting *Harris v Cockrell*, 313 F3d 238, 245 (5th Cir 2002). Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence of guilt was so insubstantial that in probability, but for the remarks, no conviction would have resulted. *Geiger v Cain*, 540 F3d 303, 308 (5th Cir 2008); *Hughes*, 530 F3d at 347, quoting *Harris*, 313 F3d at 245.

Here, Bealefield has failed to show that objections or motions would have been successful. The complained-of arguments were a summation of the evidence or a reasonable deduction from the evidence. Bealefield has not established that the prosecutor's comments during closing warranted objections. Beyond that, defense counsel has "wide latitude" when it comes to determining the best strategy. *Ward v Stephens*, 777 F3d 250, 264 (5th Cir 2015), abrogated on other grounds, *Ayestas v Davis*, 138 S Ct 1080 (2018); see also *Clark v Thaler*, 673 F3d 410, 427 (5th Cir 2012) (recognizing broad deference to which counsel is entitled in making tactical decisions in closing argument "because of the broad range of legitimate defense strategy at that stage"). Decisions to object or not object during closing argument are matters of trial strategy that are presumed reasonable under *Strickland*. *Wiley v Puckett*, 969 F2d 86, 102 (5th Cir 1992). At trial, trial counsel was not ineffective for not making an objection that would have been denied. See *Clark v Collins*, 19 F3d 959, 966 (5th Cir 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite"); *Green v Johnson*, 160 F3d 1029, 1037 (5th Cir 1998), citing *Sones v*

31

*Hargett*, 61 F3d 410, 415 n 5 (5th Cir 1995) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . .").

As such, Bealefield hasn't overcome the strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. See *Strickland*, 466 US at 689; *Wilkerson*, 950 F2d at 1064. He also fails to meet his burden to affirmatively prove his counsel's actions prejudiced his trial or that but for counsel's errors, the result of the proceeding would be different. See *Strickland*, 466 US at 693–94.

Second, Bealfield asserts that counsel rendered ineffective assistance by failing to object to the jury charge. Dkt 3 at 14–15. The state *habeas* court found:

> 19. The Court finds that the applicant fails to prove Mr. McCoy was deficient for failing to object to the "on or about" language in the jury charge and the charge's failure to specify a 30-day period.
>
> a. On appeal, the applicant raised sufficiency of the evidence with regard to the 30-day period and raised errors in the jury charge. *Bealefield*, 2018 WL 3734102. The Court of Appeals overruled the applicant's issues and affirmed the applicant's conviction. *Id.; see also Brown v. State*, 381 S.W.3d 565, 574 (Tex. App. Eastland 2012, no pet.) (indicating that children are sometimes unable to identify the exact dates of their abuse, and that this offense, which focuses on a continuing course of conduct rather than on precise dates, was created in response to that inability).
>
> b. The applicant fails to establish there is a reasonable probability he would have

32

> prevailed on appeal had Mr. McCoy
> objected to the "on or about" language
> in the jury charge and the charge's failure to
> specify a 30-day period.

Dkt 12-39 at 25–26.

The offense of "continuous sexual abuse of a child" was specifically created so that sexual abuse of children could be successfully prosecuted despite the fact that children often cannot remember the exact dates of their abuse. See *Brown v State*, 381 SW3d 565, 574 (Tex App Eastland 2012). Bealefield has failed to show that an objection to the jury instruction would have been successful. And so, his trial counsel wasn't ineffective for not making an objection that would have been denied. See *Clark v Collins*, 19 F3d 959, 966 (5th Cir 1994). Especially given the statutory purpose, counsel may have made a tactical decision not to object. Bealefield fails to meet his burden regarding lack of objection to the jury instruction to affirmatively prove his counsel's actions prejudiced his trial or that but for counsel's errors, the result of the proceeding would be different. See *Strickland*, 466 US at 693–94.

Third, Bealefield asserts that counsel rendered ineffective assistance by failing to object to the prosecution's closing argument and the lack of notice regarding extraneous offenses. Dkt 3 at 13–15. Bealefield asserts that extraneous offenses were presented to the jury because the prosecutor argued during closing that the complainant may have been older than thirteen when Bealefield took photos of her in lingerie, and thus, he would have been guilty of a different offense. Dkt 3 at 13–14.

Bealefield hasn't shown that the decision to not object wasn't based on counsel's strategy. *West v Johnson*, 92 F3d 1385, 1400 (5th Cir 1996). The jury was instructed that they could find Bealefield guilty of continuous sexual abuse of a child or aggravated sexual assault. Dkt 11-25 at 41. Counsel chose to focus on showing that the abuse didn't take place when A.R. was thirteen years old. Counsel maintained there was no evidence, other than A.R.'s

incredible testimony, of any sexual abuse. Arguing that the evidence of abuse after the complainant turned 14 would constitute a different offense, could have risked Bealefield being charged with multiple offenses. Counsel may have made a tactical decision not to give the jury an option of finding Bealefield guilty of aggravated sexual assault in addition to continuous sexual abuse of a child

Bealefield fails to meet his burden of proof and doesn't demonstrate that his trial counsel was ineffective for failing to object or was in some way objectively unreasonable in his actions. Bealefield has further failed to show his trial counsel was ineffective because he has not overcome the presumption that the actions were trial strategy.

Bealefield fails to meet his burden to affirmatively prove his counsel's actions prejudiced Bealefield's trial or that but for counsel's errors, the result of the proceeding would be different. See *Strickland*, 466 US at 693–94. Thus, all of Bealefield's claims regarding his trial counsel's failures to object and file motions are without merit and should be denied.

### ii.   Claim 1F: failure to suppress evidence

Bealefield argues that he was denied effective assistance of counsel because trial counsel failed to seek suppression of the evidence seized during his arrest.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v Illinois*, 439 US 128, 133–34 (1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Id at 134 (citations omitted). To have standing to seek to suppress evidence on the ground that it was obtained in an unconstitutionally unreasonable search and seizure, a defendant must show that he had a reasonable expectation of privacy violated by the government. *Rakas*, 439 US at 139–40. "A defendant bears

34

the burden of establishing standing to challenge a search under the Fourth Amendment—that he has 'a privacy or property interest in the premises searched or the items seized which is sufficient to justify a "reasonable expectation of privacy" therein.' Standing 'is a personal right which cannot be asserted vicariously.'" *United States v Pierce*, 959 F2d 1297, 1303 (5th Cir 1992) (internal citations omitted), cert denied, 506 US 1007 (1992); *see also Granados v State*, 85 SW3d 217, 223 (Tex Crim App 2002) (a defendant has the burden to show that he had a subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable).

Furthermore, failing to file a suppression motion isn't *per se* ineffective assistance of counsel. *Kimmelman v Morrison*, 477 US 365, 384 (1986). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v Oakley*, 827 F2d 1023, 1025 (5th Cir 1987). Additionally, the defendant must show counsel's inaction amounts to deficient representation and actually prejudiced the defense. *Strickland*, 466 US at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 US at 693. Actual prejudice in the context of an unfiled suppression motion requires a meritorious Fourth Amendment violation and "a reasonable probability that the verdict would have been different" absent the excludable evidence. *Kimmelman*, 477 US at 375.

The state *habeas* court found:

> 11. The Court finds that the applicant fails to prove Mr. McCoy was deficient for allegedly failing to move to suppress all illegally-obtained evidence, including the text messages taken from the victim's laptop.

35

a. The applicant's claim that Mr. McCoy failed to move to suppress illegally-seized items is contrary to the record.

b. Mr. McCoy filed two motions to suppress -- a motion to suppress physical items and a motion to suppress the applicant's statements. See State's Writ Exhibits B and C, Motions to Suppress. Mr. McCoy referred to his motions multiple times during trial. See 5 R.R. at 33-34, 39, 56-58.

c. When the State attempted to offer certain items into evidence during the victim's trial testimony, Mr. McCoy objected and/or questioned the victim on voir dire to determine how the police obtained the items. 4 R.R. at 63-65 (the prepaid phones); 5 R.R. at 33-40 (the text messages and photos); 43-44 (the shirts); 45 (the victim's underwear, which resulted in a sustained objection).

d. The applicant does not have standing to suppress items that the victim gave the police.

e. At Mr. McCoy's request, the trial court held a suppression hearing during trial in which the applicant testified for the limited purpose of the hearing. 5 R.R. at 58-158 (suppression hearing); 128-146 (the applicant's testimony). Mr. McCoy argued the legality of the applicant's stop and his arrest pursuant to that stop. 5 R.R. at 148-152. The trial court found that the detention and length were reasonable and that certain seized items were admissible. 5 R.R. at 152. However, pursuant to Mr. McCoy's motion and the evidence presented to the court, the trial court

36

> suppressed the items found in the vehicle's
> trunk. 5 R.R. at 152. The trial court ruled
> that the applicant's statements were
> admissible. 5 R.R. at 157-158.

Dkt 12-39 at 14–15.

Bealefield has not shown that he had standing to challenge the evidence A.R. or her family gave to police, such as the prepaid phones, text messages, t-shirts, and underwear. His objections were overruled.

Any additional suppression motion or challenge by trial counsel would have been meritless. Lacking standing to object to the evidence A.R. gave the police, Bealefield cannot show that trial counsel's performance was deficient or that prejudice resulted from trial counsel's performance. See *Kimmelman*, 477 US at 375; *Oakley*, 827 F2d at 1025; see also *Green v Johnson*, 160 F3d 1029, 1037 (5th Cir 1998) (because failure to make frivolous objection doesn't cause counsel's performance to fall below an objective level of reasonableness, the petitioner hasn't established deficient performance).

e.   Conclusion as to trial counsel

As to each of the foregoing assertions, Bealefield hasn't shown that the performance by his trial counsel was deficient or that he was actually prejudiced as a result. *Strickland v Washington*, 466 US 668 (1984). The state *habeas* court made extensive findings of fact.

The state *habeas* court found:

> 21.  The Court finds that the applicant
> fails to overcome the strong presumption
> that Mr. McCoy's actions were reasonable
> and based on sound trial strategy.

> 22.  The Court finds that the applicant
> fails to prove that Mr. McCoy was
> objectively unreasonable or deficient
> during his representation of the applicant.

> 23.  The Court finds that the applicant
> fails to prove that there is a reasonable

probability that, but for Mr. McCoy's allegedly deficient performance, the result of the proceeding would have been different.

Dkt 12-39 at 26–27.

The state *habeas* court concluded:

3. The applicant fails to prove by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *see also Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

4. The applicant fails to prove that trial counsel failed to conduct an adequate pretrial investigation. *See Mooney v. State,* 817 S.W.2d 693, 697 (Tex. Crim. App. 1991).

5. The applicant fails to prove that the trial judge would have committed error in overruling the objection of which the applicant complains his trial counsel failed to make. *Ex parte White,* 160 S.W.3d 46, 53-54 (Tex. Crim. App. 2004); *Vaughn v. State,* 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

6. The applicant fails to overcome the strong presumption that trial counsel's actions were reasonable and based on sound trial strategy. *See Ex parte White,* 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *see also Jackson v. State,* 877 S.W.2d 768,

38

771 (Tex. Crim. App. 1994); *see also Ex parte Ellis,* 233 S.W.3d 324, 330 (Tex. Crim. App. 2007) (the applicant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy).

7. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. Counsel's performance is judged by the totality of the representation, and judicial scrutiny of counsel's performance must be highly deferential with every effort made to eliminate the distorting effects of hindsight. *Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Id.*

Dkt 12-39 at 27–29. The Texas Court of Criminal Appeals also denied this claim for ineffective assistance without written order on the findings of the trial court without a hearing and on the court's own independent review of the record on April 14, 2021. Dkt 9-1 at 1.

Bealefield fails to establish, as is his burden, that the state court's decision was contrary to clearly established federal law or an objectively unreasonable application of it. 28 USC § 2254(d); *Cobb,* 682 F3d at 372–73. As such, Bealefield hasn't shown that he is entitled to *habeas corpus* relief on this claim. 28 USC § 2254(d)(1).

6. Claim 4: infirmities in state *habeas* proceedings

Bealefield challenges certain events from the state proceedings on *habeas corpus.* See Dkt 5 at 1; Dkt 16 at 6.

39

He complains that the state court failed to forward his state application to the Texas Court of Criminal Appeals on the 181st day, causing a delay of 193 days; allowed counsel to wait 516 days before filing his affidavit; refused to rule on motions; and failed to notify him that his case had been remanded.

The Fifth Circuit is clear that "alleged infirmities in state habeas proceedings are not grounds for federal habeas relief." *Brown v Dretke*, 419 F3d 365, 378 (5th Cir 2005). "An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'" *Nichols v Scott*, 69 F3d 1255, 1275 (5th Cir 1995), quoting *Millard v Lanaugh*, 810 F2d 1403, 1410 (5th Cir)*, cert denied*, 484 US 838 (1987).

Even liberally construed, Bealefield's claims in this regard must be summarily dismissed.

### 7. Motion for evidentiary hearing

Bealefield seeks an evidentiary hearing as to his challenge to his conviction and sentence. See Dkt 19.

Rule 8 of the Rules Governing Section 2254 Cases states, "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." The reviewing court thus has discretion to reject the need for an evidentiary hearing. See *Conner v Quarterman*, 477 F3d 287, 293 (5th Cir 2007), citing *Roberts v Dretke*, 381 F3d 491, 497 (5th Cir 2004). Indeed, AEDPA reflects a congressional intent "to avoid unneeded evidentiary hearings" in federal proceedings on *habeas corpus* proceedings. *Williams v Taylor*, 529 US 420, 436 (2000). Section 2254(e)(2) of Title 28 thus provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—

40

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A federal *habeas corpus* petitioner can have an evidentiary hearing if a genuine factual dispute exists and the state hasn't afforded a full and fair hearing. *Clark v Johnson*, 202 F3d 760, 766 (5th Cir 2000), quoting *Perillo v Johnson*, 79 F3d 441, 444 (5th Cir 1996). But a petitioner isn't entitled to a federal evidentiary hearing "if his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Young v Herring*, 938 F2d 543, 560 (5th Cir 1991), quoting *Blackledge v Allison*, 431 US 63, 74 (1977); see also *Washington v Davis*, 715 F Appx 380, 385 (5th Cir 2017, *per curiam*).

Bealefield presents nothing but conclusory assertions that he is illegally confined due to ineffective assistance of counsel, prosecutorial misconduct, and state *habeas* court error. Dkt 19. An evidentiary hearing isn't necessary where nothing establishes a pertinent factual dispute requiring development in order to assess the claims. *Robison v Johnson*, 151 F3d 256, 268 (5th Cir 1998) (internal quotations omitted). To the contrary, all issues raised in this case can be and have been resolved based on the pleadings.

The motion for evidentiary hearing will be denied. Dkt 19.

41

### 8.   Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v McDaniel*, 529 US 473, 484 (2000). Where the court denies relief based on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and that they "would find it debatable whether the district court was correct in its procedural ruling." Ibid.

The Court finds that reasonable jurists wouldn't find this Court's assessment of the constitutional claims debatable or wrong. As such, Bealefield hasn't made the necessary showing to obtain a certificate of appealability.

A certificate of appealability will be denied.

### 9.   Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner Edward Bealefield lacks merit.

The motion by Respondent Bobby Lumpkin for summary judgment is GRANTED. Dkt 9.

The petition by Bealefield for a writ of *habeas corpus* is DENIED. Dkt 1. Bealefield's motion for evidentiary hearing is DENIED. Dkt 19.

Any other pending motions are DENIED AS MOOT.

This case is DISMISSED WITH PREJUDICE.

A certificate of appealability is DENIED.

SO ORDERED.

Signed on September 30, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

43